## PEOPLE v LOVE

Docket No. 60079. Submitted August 19, 1982, at Detroit.—Decided August 1, 1983.

Abner M. Love was convicted in Detroit Recorder's Court, Clarence Laster, Jr., J., of second-degree murder, kidnapping and felony-firearm and was sentenced to two concurrent 5-1/2- to 20-year prison terms on the murder and kidnapping convictions and the mandatory consecutive 2-year term for the felony-firearm conviction. Defendant appealed. *Held:*

1. The trial court did not err by compelling defendant's estranged wife, a res gestae witness, to testify against her husband regarding the second-degree murder charge. The spousal privilege in Michigan does not apply where, as here, a crime committed against a third person (the murder) as part of the same criminal transaction as a crime committed against a spouse (the kidnapping) grows out of a personal wrong or injury done to the spouse and the defendant is prosecuted for both crimes in the same proceeding.

2. The trial court did not err by compelling defendant's estranged wife to testify against her husband regarding the kidnapping charge where she was the victim and complainant. A spouse-witness who is a victim or complainant in an action arising out of a personal wrong or injury done by the other spouse may be compelled to testify against the other spouse.

3. The prosecutor presented sufficient evidence to prove de-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 75 Am Jur 2d, Trial § 196.

81 Am Jur 2d, Witnesses §§ 125, 126.

Competency of one spouse to testify against other in prosecution for offense against third party as affected by fact that offense against spouse was involved in same transaction. 36 ALR3d 820.

[3] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*

[4] 29 Am Jur 2d, Evidence § 204.

[5] 1 Am Jur 2d, Abduction and Kidnapping §§ 20, 21.

[6, 7] 21 Am Jur 2d, Criminal Law §§ 531, 596.

Defendant's right to disclosure of presentence report. 40 ALR3d 681.

Necessity and sufficiency of question to defendant as to whether he has anything to say why sentence should not be pronounced against him. 96 ALR2d 1292.

fendant guilty of kidnapping, and the trial court did not err in so holding.

4. Defendant was not denied his right of allocution.

Affirmed.

1. CRIMINAL LAW — WITNESSES — SPOUSAL PRIVILEGE.

A trial court did not err in compelling a defendant's spouse to testify against the defendant where the defendant committed a crime growing out of a personal wrong or injury done to the spouse, committed a crime against a third person as part of the same criminal transaction as the crime committed against the spouse, and the defendant was prosecuted for both crimes in the same proceeding (MCL 600.2162; MSA 27A.2162).

2. CRIMINAL LAW — WITNESSES — SPOUSAL PRIVILEGE — COURT RULES.

A spouse who is a victim or complainant in an action arising out of a personal wrong or injury done by the other spouse may be compelled to testify against the other spouse (MCL 600.2162; MSA 27A.2162; GCR 1963, 506.1).

3. APPEAL — BENCH TRIAL — SUFFICIENCY OF EVIDENCE.

The standard of review for sufficiency of the evidence in a bench trial is (1) whether the trial court clearly erred by ruling the defendant guilty beyond a reasonable doubt or (2) whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt.

4. CRIMINAL LAW — INTENT.

The element of intent may be inferred from the defendant's acts.

5. KIDNAPPING — INTENT.

A conviction of kidnapping requires proof of no intent more specific than an intent to confine or imprison another person against his will.

6. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORTS — RIGHT OF ALLOCUTION — COURT RULES.

GCR 1963, 785.12, dealing with inspection of presentence reports, does not require that a defendant personally review a copy of the presentence report so long as his attorney is given the opportunity to review the report; the right of allocution at sentencing guaranteed by GCR 1963, 785.8(2) has application with respect to GCR 1963, 785.12 only to the extent that it requires that the court "give defendant and his attorney a reasonable opportunity to advise the court of any circum-

stances they believe the court should consider in imposing sentence" (GCR 1963, 785.8[2], 785.12).

7. CRIMINAL LAW — SENTENCING — RIGHT OF ALLOCUTION — COURT
   RULES.

   A defendant was not denied his right of allocution at sentencing regarding the contents of his probation or clinic reports which were included with his presentence report where (1) defense counsel stated on the record that he had read both the clinic and probation reports, (2) the court gave defendant and his counsel ample opportunity to address the court, and (3) neither defendant nor his counsel challenged the accuracy of the reports (GCR 1963, 785.8[2], 785.12).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Thaddeus K. Dean,* for defendant.

Before: BRONSON, P.J., and MACKENZIE and K. N. SANBORN,* JJ.

K. N. SANBORN, J. The trial court convicted defendant of (1) second-degree murder, MCL 750.317; MSA 28.549, (2) kidnapping, MCL 750.349; MSA 28.581, and (3) felony-firearm, MCL 750.227b; MSA 28.424(2), following a bench trial on May 5, 1981. The trial court sentenced defendant to two concurrent 5-1/2- to 20-year prison terms for the murder and kidnapping convictions and the mandatory consecutive 2-year prison term for the felony-firearm conviction. Defendant appeals as of right.

The major witness presented by the prosecution was defendant's wife, Sue Love. Her testimony

* Circuit judge, sitting on the Court of Appeals by assignment.

established that she was separated from defendant and had begun divorce proceedings at the end of October, 1980. Defendant arrived at Ms. Love's home after her afternoon work-shift sometime around 11 or 11:30 p.m. on October 30, 1980. He accused his estranged wife of "fooling around" with her co-worker, Johnny McQueen. Defendant telephoned Mr. McQueen to ask him to come over to his wife's house to discuss his relationship with defendant's wife. Mr. McQueen arrived about 20 minutes later.

Defendant, his wife, and Mr. McQueen went outdoors and into Mr. McQueen's car where they talked. Mr. McQueen sat in the front seat of the car with Ms. Love. Defendant sat in the back seat. After some discussion followed by a few moments of silence, defendant asked Mr. McQueen for a cigarette. After Mr. McQueen gave defendant a cigarette, defendant pulled a nickle-plated hand-gun out of his pocket and shot Mr. McQueen at close range in the temple. Defendant then pushed Mr. McQueen's body out of the car, took the driver's seat, pointed the gun in his wife's direction, and threatened to harm her if she tried to leave.

Defendant drove aimlessly for some time before stopping at a vacant house for about one-half hour. Defendant then forced his wife back into Mr. McQueen's automobile, drove aimlessly again, and went to the home of some friends after the car ran out of gas. Ms. Love testified that defendant did not threaten her during this period, but did threaten her initially.

Prior to Ms. Love's testimony, defense counsel had moved to suppress her testimony regarding the killing of McQueen. Defendant argued that her testimony regarding that crime was excludable

under the spousal privilege statute. That statute provides, in pertinent part:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, in cases of prosecution for a crime committed against the children of either or both and where the cause of action grows out of a personal wrong or injury done by one to the other." MCL 600.2162; MSA 27A.2162.

The trial court denied the motion, finding a New Jersey case with a similar fact situation persuasive. *State v Briley,* 53 NJ 498; 251 A2d 442 (1969). The trial court also found that defendant's spousal privilege had been waived when Ms. Love testified at the preliminary examination. At both the preliminary examination and trial, Ms. Love stated on the record that she did not wish to testify against her husband. Furthermore, defendant objected and stated that he did not consent to a waiver of the privilege.

Defendant's first argument in this appeal is that the trial court erred by compelling Ms. Love to testify against her husband regarding the second-degree murder charge. We disagree.

In *Briley,* relied upon by the trial court, the defendant husband shot and murdered a male companion of his estranged wife and then assaulted his wife with a gun. At that time, New Jersey had a statutory rule of evidence similar to Michigan's spousal privilege statute. New Jersey charged Briley with the murder of his wife's male companion and with an assault against his wife. The trial court compelled Briley's wife to testify regarding the murder charge as well as the assault

against her over defendant's objection. The *Briley* Court held,

"If there is a single criminal event in which she and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding. And, in this connection, it should be immaterial that the offense against the wife does not reach the same dimensions of criminality as it does against the third-party victim." *Briley,* 53 NJ 507; 251 A2d 446.

We find *Briley* persuasive.

In *People v Wadkins,* 101 Mich App 272; 300 NW2d 542 (1980), this Court reviewed the historical underpinnings of the statutory spousal privilege. The spousal privilege does not have a constitutional foundation. Rather, its foundation was laid upon the historical notions that a defendant was incapable of testifying on his or her own behalf and the unity of husband and wife as one person in marriage. *Wadkins,* pp 283-284. The modern justification for the spousal privilege is preservation of marital harmony. *Wadkins,* p 283.

In *Trammel v United States,* 445 US 40; 100 S Ct 906; 63 L Ed 2d 186 (1980), in which the Court held that a witness-spouse may testify against the defendant-spouse without the accused spouse's consent under the federal common-law spousal privilege rule, the Court said:

"Testimonial exclusionary rules and privileges contravene the fundamental principle that ' "the public * * * has a right to every man's evidence." ' *United*

*States v Bryan,* 339 US 323, 331 [94 L Ed 884; 70 S Ct 724] (1950). As such, they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Elkins v United States,* 364 US 206, 234 [4 L Ed 2d 1669; 80 S Ct 1437] (1960) (Frankfurter, J., *dissenting).* Accord, *United States v Nixon,* 418 US 683, 709-710 [41 L Ed 2d 1039; 94 S Ct 3090] (1974)." 445 US 50-51.

In *Wadkins,* p 283, this Court said:

"The spousal privilege in Michigan, like the modern common law privilege, is narrow in its justification and ought to be correspondingly narrowly construed in its scope."

The Legislature employed remarkably broad language in drafting the victim-spouse exception quoted above. Because the spousal privilege should be narrowly construed, the exceptions to the spousal privilege stated in the statute should be construed broadly. Therefore, we hold that a crime committed against a third person as part of the same criminal transaction as a crime committed against a spouse "grows out of a personal wrong or injury" done to the spouse and is therefore within the exception. This result is consistent with the policy behind the statute. Marital harmony will not be significantly decreased if the victim-spouse is required to testify on two charges arising from the same criminal transaction rather than merely one.

This result is also in accord with the overwhelming weight of authority from other jurisdictions. See *Briley, supra; State v Wilson,* 218 Or 575; 346 P2d 115 (1959); *People v Ford,* 60 Cal 2d 772; 36

Cal Rptr 620; 388 P2d 892 (1964); *Wilkerson v United States,* 342 F2d 807 (CA 8, 1965); *Commonwealth v Robinson,* 468 Pa 575; 364 A2d 665 (1976); *State v Thompson,* 88 Wash 2d 518; 564 P2d 315 (1977); *People v McGregor,* — Colo App —; 635 P2d 912 (1981), and *Brown v Commonwealth,* 223 Va 601; 292 SE2d 319 (1982). In cases where the privilege has been held to prevent the spouse's testimony, the crime against the spouse was either not prosecuted in the same proceeding or not prosecuted at all. See Anno: *Competency of One Spouse To Testify Against Other in Prosecution for Offense Against Third Party as Affected by Fact That Offense Against Spouse Was Involved in Same Transaction,* 36 ALR3d 820, and the cases discussed therein. Research has failed to uncover a single reported decision in which both crimes were prosecuted in the same proceeding and the spousal privilege was held to apply.

Defendant's second argument is that the trial court also erred by compelling Ms. Love to testify against her husband regarding the kidnapping charge where she was the victim and complainant. During oral argument before this Court, defendant relied upon *People v Sykes,* 117 Mich App 117; 323 NW2d 617 (1982). In *Sykes,* a panel of this Court recognized that the spousal privilege statute excepts the testimonial privilege where the cause of action arises from a personal wrong or injury done by one spouse to the other. *Sykes,* p 122. Nevertheless, the *Sykes* Court said:

"This exception was carved out for the benefit of the victim-spouse who wishes to testify regarding such a wrong or injury. We hold that the statutory exception to the spousal privilege is a permissive one. It allows the victim-spouse to testify against the defendant-spouse if the victim so desires. We do not interpret the

exception to *require* the victim-spouse to testify against the defendant-spouse when the cause of action grows out of a personal injury or wrong done by the defendant to the victim." *Sykes,* pp 122-123.

We disagree. We hold that a spouse-witness who is a victim or complainant in an action arising out of a personal wrong or injury done by the other spouse may be compelled to testify. GCR 1963, 506.1.

The *Sykes* Court recognized that when an action arises out of a personal injury or wrong done by one spouse to another, "the need to preserve marital harmony is no longer compelling; presumably the wrong or injury has already disrupted such harmony". *Sykes,* p 122. Nevertheless, the *Sykes* Court justified its holding that the statutory exception to the spousal privilege is permissive by reasoning that,

"Although there is a presumption that marital harmony no longer exists when one spouse injures another, this is not conclusive. If the victim-spouse does not want to testify, and there is no indication that such a reluctance stems from fear of the defendant, some marital harmony may still exist between the parties. This is what the marital privilege statute aims to protect, and the statute's purpose should not be undercut by interpreting the exception as requiring the victim's testimony." *Sykes,* p 123.

The spousal privilege statute excepts the privilege when a cause of action involves a wrong or injury by one spouse against the other. Thus, that victim-spouse is equivalent to any other witness, and may, therefore, be compelled to testify under GCR 1963, 506. To create a common-law permissive privilege in such a situation broadens the impact of the spousal privilege rather than nar-

rows it. Such a construction contravenes the principle that the court should employ all rational means for ascertaining the truth.

Moreover, the rationale for the *Sykes* rule, preservation of marital harmony, fails in this case. At the time of the incident in this case, defendant and his wife were separated. Ms. Love had filed divorce pleadings. At trial, defendant and his wife were still estranged. Therefore, there was no reason for the trial court to grant defendant's motion to suppress Ms. Love's testimony regarding the kidnapping charge on a presumption that some marital harmony still existed between the defendant and his wife.

Thus, we find that the trial court did not err by compelling Ms. Love to testify against her husband regarding the kidnapping charge.

Defendant's third argument is that the prosecutor presented insufficient evidence to find him guilty of kidnapping. The standard of review for sufficiency of the evidence in a bench trial is (1) whether the trial court clearly erred by ruling defendant guilty beyond a reasonable doubt, *People v Hubbard,* 19 Mich App 407, 413; 172 NW2d 831 (1969), *aff'd* 387 Mich 294 (1972), or (2) whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt, *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). Applying either standard, *People v Triplett,* 105 Mich App 182, 190-191; 306 NW2d 442 (1981), we find that the prosecutor did sufficiently prove defendant guilty of kidnapping.

Defendant claims that the prosecutor presented insufficient evidence at trial to support a finding that he possessed the intent to kidnap. This Court has found that the element of intent may be

inferred from the defendant's acts. *People v Leon Morgan,* 27 Mich App 388; 183 NW2d 617 (1970); *People v Gill,* 8 Mich App 89; 153 NW2d 678 (1967). This Court has also found that "[a] conviction of kidnapping requires proof of no intent more specific than an intent to confine or imprison another person against his will". *People v Jones,* 92 Mich App 100, 107; 284 NW2d 501 (1979).

The prosecutor in this case presented evidence that defendant told Ms. Love after he shot Mr. McQueen not to run away or he would kill her. Moreover, during the period defendant drove Mr. McQueen's car, Ms. Love asked to be taken home. Defendant told her she couldn't go home. During this period, defendant carried the pistol he had used to shoot Mr. McQueen. We find this evidence sufficient beyond a reasonable doubt for a rational factfinder to establish that defendant intended to kidnap his wife. The trial court did not clearly err in so finding.

Defendant's fourth and final argument in this appeal is that he was denied his right of allocution, GCR 1963, 785.8(2), at sentencing because he was not informed of the contents of his probation or clinic reports. Those reports were included with the defendant's presentence report. Defendant argues that if GCR 1963, 785.12, which requires disclosure of the contents of presentence reports to defense counsel, is to have any meaning, the record must reflect that defense counsel discussed the contents of the report with defendant. Otherwise a defendant cannot inform the court of inaccuracies when that defendant exercises his or her right of allocution.

GCR 1963, 785.12 provides in pertinent part:

"The sentencing court shall permit the defendant's

attorney, or if the defendant is not represented by counsel, the defendant, to inspect the presentence report. The prosecution must also be shown the report. Both parties must be given an opportunity at the time of sentencing to explain or controvert any factual representations in the presentence report."

In *People v Oster (On Resubmission)*, 97 Mich App 122, 139-140; 294 NW2d 253 (1980), *lv den* 411 Mich 920 (1981), this Court addressed the same issue in light of the above court rule:

"Quite literally, this provision does not require that a defendant personally review a copy of the presentence report, so long as his attorney is given the opportunity to review the report. The right of allocution at sentencing guaranteed by GCR 1963, 785.8(2) has application with respect to GCR 1963, 785.12 only to the extent that it requires that the court 'give defendant and his attorney a reasonable opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence.' "

At defendant's sentencing, his counsel stated on the record that he had read both the clinic and probation reports. Defense counsel said both reports included recommendations of a mild to moderate term of incarceration. The trial court gave defendant and his counsel ample opportunity to address the court. Both took that opportunity. Neither defendant nor his counsel challenged the accuracy of the probation or clinic reports. These facts convince this Court that the trial court complied with both GCR 1963, 785.8(2) and GCR 1963, 785.12. Thus, defendant was not denied his right of allocution.

Affirmed.