PEOPLE v LANDRUM

Docket No. 79079. Submitted July 1, 1985, at Lansing. Decided
    October 22, 1986.

Celestine Landrum was convicted by a jury in Jackson Circuit
    Court of second-degree murder. She thereafter pled guilty to a
    supplemental information charging her as a third-time habitual
    offender. The trial court, Charles J. Falahee, J., sentenced
    defendant to from twenty to forty years imprisonment. Defen-
    dant appeals alleging several errors.

The Court of Appeals *held:*

1. The trial court erred in instructing the jury on the lesser
    included offense of voluntary manslaughter without also in-
    structing on involuntary manslaughter. Reversal is required
    because the jury was deprived of the option of convicting the
    defendant consistent with the defendant's theory.

2. The instruction given by the trial court did not conform to
    the defendant's actual theory of self-defense. If properly re-
    quested, the trial court should instruct the jury that the
    defendant could use deadly force if necessary to repel sexual
    assault involving forced penetration as well as serious bodily
    harm or death.

3. The evidence was sufficient when viewed in a light most
    favorable to the prosecution to permit a rational trier of fact to
    find all the elements of second-degree murder beyond a reason-
    able doubt.

4. The trial court's failure to sua sponte instruct the jury
    that a finding of imperfect self-defense does not compel them to

REFERENCES

Am Jur 2d, Homicide §§ 41 *et seq.*; 121, 519, 525 *et seq.*

Am Jur 2d, Trial §§ 574, 575, 727, 876 *et seq.*

Lesser-related state offense instructions: modern status. 50 ALR4th
    1081.

Accused's right, in homicide case, to have jury instructed as to both
    unintentional shooting and self-defense. 15 ALR4th 983.

Modern status of law regarding cure of error, in instructions as to
    one offense, by conviction of higher or lesser offense. 15 ALR4th
    118.

find defendant guilty of second-degree murder did not manifestly prejudice defendant.

5. The prosecutor's mischaracterizations of two of defendant's prior convictions was not error requiring reversal.

Reversed and remanded.

SHEPHERD, P.J., concurred but wrote separately to indicate his belief that the defendant did not receive effective assistance of counsel.

1. HOMICIDE — APPEAL — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES — VOLUNTARY MANSLAUGHTER — INVOLUNTARY MANSLAUGHTER.

It is error in a murder trial for a trial court to instruct sua sponte on the lesser included offense of voluntary manslaughter without also instructing on involuntary manslaughter; reversal is required where the jury is deprived of the option of convicting the defendant consistent with the defendant's theory of the case.

2. TRIAL — JURY INSTRUCTIONS — CRIMINAL LAW.

It is a trial judge's duty to instruct the jury on all the elements of the crime charged; material issues, defenses or theories may not be excluded where there is evidence to support them.

3. HOMICIDE — JURY INSTRUCTIONS — DEADLY FORCE.

A trial court in a homicide action, in which the defendant claims to have defended herself against forcible sexual assault, if properly requested, should instruct the jury that the defendant could use deadly force if necessary to repel sexual assault involving forced penetration as well as serious bodily harm or death.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph S. Filip,* Prosecuting Attorney, and *Brian E. Thiede,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Stuart B. Lev*), for defendant on appeal.

Before: SHEPHERD, P.J., and R. B. BURNS and R. L. TAHVONEN,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant Celestine Landrum was convicted by a jury of second-degree murder, MCL 750.317; MSA 28.549. After pleading guilty to a supplemental information charging her as a third-time habitual offender, MCL 769.11; MSA 28.1083, defendant was sentenced to from twenty to forty years in prison. She appeals as of right. We reverse and remand for a new trial.

Defendant was charged with the beating death of Henry Green Thomas. Thomas' body was discovered in his home on December 6, 1983, lying face up on the bathroom floor. There was blood on the kitchen walls and floor and on the bathroom floor and bathtub. One of the bedrooms was in a state of disarray—the bed covers open, an end table broken, bloodstains on the bed, etc. In the bathroom, police found parts of a broken telephone receiver, a cracked toilet tank and toilet cover, broken glass on the floor and, in the bathtub, the base of a lamp and a broken vase.

Defendant testified at trial that she met Henry Thomas about one week prior to December 5, 1983, in a local bar. He wanted to engage her services to have sexual relations with him but, because he did not have any money, defendant told him to return when he had some money. Thomas approached her again in the same bar on the afternoon of December 5. Defendant agreed to accompany him to his home and he agreed to pay her $30. Once there, defendant refused to take off her clothes until she was paid. Thomas promised to pay her. After drinking whiskey and dancing for several hours, Thomas told defendant to go into the bedroom. He pushed her towards the bed, said he did not have the money and that he was going to take what he wanted anyway. Defendant tried to leave. Thomas ordered her to take off her clothes and get into bed. Defendant complied. When Thomas disrobed

and climbed on top of her, defendant hit him on
the head with the telephone. Thomas threatened
to kill defendant, grabbing her as she tried to get
out of the bed. They fell to the floor. Defendant hit
Thomas with an end table. Thomas grabbed her
again before she could reach her clothes. Defen-
dant ran into the bathroom. Thomas found her
there with the telephone receiver and tried to
force his way into the bathroom. Defendant backed
away from the door. The door flew open and
Thomas landed in the bathtub. When defendant
tried to leave the room, Thomas grabbed her
around her ankles. He pulled her into the bathtub
and the two continued to fight. Defendant man-
aged to get away. Thomas climbed out of the
bathtub and pushed defendant against the toilet,
cracking the toilet cover and seat. Defendant hit
Thomas on the head with a bottle. Then she
pushed him into the bathtub and hit him a num-
ber of times with the telephone receiver. Defen-
dant stated that Thomas was conscious and speak-
ing when she departed.

Defendant learned of Thomas' death from the
newspaper the evening of December 6, 1983. She
admitted she was not afraid that defendant would
kill her until after she hit him with the telephone
receiver. However, defendant testified that she did
not intend to allow Thomas to rape her.

I

Defendant contends the trial judge abused his
discretion in failing to instruct, sua sponte, on
involuntary manslaughter. We agree.

Involuntary manslaughter is defined as the "kill-
ing of another without malice and unintentionally,
but in doing some unlawful act not amounting to a
felony nor naturally tending to cause death or

great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923). The act may or may not be unintentional, as long as the actor did act with the intent to cause death or great bodily harm or with wilful or wanton disregard of the consequences. Cf., *Wellar v People,* 30 Mich 16, 21 (1874).

The jury was instructed on verdicts of second-degree murder, voluntary manslaughter and not guilty. Defendant testified that she struck Henry Thomas because he threatened to rape her. The fight continued because Thomas fought back and refused to let her leave. Defendant's claim, which was supported by the pathologist's testimony, was that she did not intend to kill the victim or to do great bodily harm, but she did intend to use as much force as necessary to leave the premises after Thomas refused to pay her for sex. Defendant did not request the voluntary manslaughter instruction. It is error for the court to sua sponte instruct on the lesser included offense of voluntary manslaughter without also instructing on involuntary manslaughter. *People v Martin,* 130 Mich App 609, 611; 344 NW2d 17 (1983), lv den 422 Mich 965 (1985). Reversal is required because the jury was deprived of the option of returning a conviction consistent with the defendant's theory. See *Martin* at 612-613.

II

To avoid confusion upon retrial, we deem it prudent to discuss a second, substantial issue raised by the defendant in this Court, specifically defendant's claim that the trial court erred by failing to inform the jury that defendant had a

right to defend herself from being raped by Henry
Thomas.

The trial court instructed the jury as follows:

> In considering whether or not the defendant
> acted in lawful defense, you should consider all of
> the evidence in light of the following rules. First,
> at the time of the act, the defendant must have
> honestly believed she is in danger of being killed
> or of receiving serious bodily harm. If she so
> believes, she may immediately act and defend
> herself even to the extent of taking human life if
> necessary. Although, it may now turn out that the
> appearances were false and that she was mistaken
> as to the extent of the real danger, and she is to be
> judged by the circumstances as they appear to her
> at the time of the act.
>
> Second, *the degree of danger which must be
> feared is serious bodily harm or death.* A person is
> not justified in killing or inflicting great bodily
> injury on another in order to protect herself from
> what appears to be slight or insignificant injury.

The jury was not instructed that defendant could
utilize self-defense if she reasonably believed she
was about to be raped. On appeal, defendant ar-
gues that the self-defense instruction as given did
not fairly apprise the jury that she was entitled to
defend herself against sexual assault involving
forced penetration. Defendant failed to object to
the instructional omission, but claims that mani-
fest injustice occurred through the prosecutor's
argument to the jury concerning the distinction
between self-defense against fear of great bodily
harm or death and self-defense against rape.

A trial judge's duty is to instruct the jury on all
the elements of the crime charged. Material issues,
defenses or theories may not be excluded where
there is evidence to support them. *People v Reed,*
393 Mich 342, 349-350; 224 NW2d 867 (1975).

Defendant has the right to have the jury pass on the evidence under proper instructions. *People v Seabrooks,* 135 Mich App 442, 452; 354 NW2d 374 (1984). Where, as here, no objection is raised to an alleged instructional omission, a verdict will not be set aside unless the error has resulted in a miscarriage of justice, i.e., when the omitted instruction pertains to a basic and controlling issue in the case. *Id.,* at 454.

Here, the instruction given did not conform to defendant's actual theory of self-defense. Our Supreme Court has indicated that rape may be resisted "unto death." *Pond v People,* 8 Mich 150 (1860). Other jurisdictions also recognize the right to defend oneself against a forcible sexual assault. See *State v Hunter,* 305 NC 106; 286 SE2d 535 (1982), citing 40 Am Jur 2d, Homicide, § 166, p 453, 40 CJS, Homicide, § 101, p 961. The nature of sexual assault involving forced penetration is so serious that a victim is justified in using deadly force to repel the attack. Moreover, rape is so often accompanied by extreme physical and emotional brutality that it carries with it the explicit or implicit threat of great bodily harm. The frequency of serious injuries attendant to rape, the physical complications such as venereal disease and pregnancy, and the inherent violation of the victim favor a rule that the victim may use deadly force to repel sexual assault involving forced penetration. See generally, Kates, *Deadly Force Self-Defense Against Rape,* 15 U Cal Davis L Rev 873 (1982).[1]

If properly requested, the trial court should instruct the jury that the defendant could use

---

[1] The Model Penal Code, § 3.04(2)(b)(1), authorizes the use of deadly force when necessary to prevent death, serious bodily harm, kidnapping or sexual intercourse. Some jurisdictions, such as Texas, Hawaii and New Jersey, have codified the right to use deadly force to repel a sexual assault.

deadly force if necessary to repel sexual assault involving forced penetration as well as serious bodily harm or death.

### III

We briefly consider defendant's remaining claims of error.

First, we reject defendant's claim that the trial court erred in denying her motion for directed verdict on the second-degree murder charge. The evidence was sufficient when viewed in a light most favorable to the prosecution to permit a rational trier of fact to find all the elements of second-degree murder, MCL 750.317; MSA 28.549, beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), reh den 407 Mich 1164 (1980), cert den sub nom *Michigan v Hampton,* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

Second, defendant's claim that the trial judge should have instructed on an "imperfect self-defense" theory is also without merit. The trial court's failure to sua sponte instruct the jury that a finding of imperfect self-defense does not compel them to find defendant guilty of second-degree murder did not manifestly prejudice defendant.

Third, we do not believe that the prosecutor's mischaracterizations of two of defendant's prior convictions amounted to error requiring reversal. The prosecutor's use of the term "fraudulent possession" in identifying defendant's prior convictions for unlawful use and sale of credit cards does not warrant reversal. Certainly, defendant's intent to use or sell a credit card which was not her own implies fraud. We do not think the jury would have evaluated defendant's credibility any differ-

ently had her prior convictions for unlawful use and sale of credit cards been stated correctly.

Finally, our reversal based on instructional error obviates any need for consideration of defendant's claim that she was denied effective assistance of counsel.

Reversed and remanded.

SHEPHERD, P.J. *(concurring).* I concur in the result but I believe that defendant did not receive effective assistance of counsel. Once we conclude that there should have been an instruction on involuntary manslaughter and on the right to resist rape, it seems to me to follow that the failure of counsel to request such instructions was serious enough to warrant placing a portion of the blame in this case where it belongs, i.e., on the failure of counsel to adequately represent the defendant. This is especially so when we recognize that the defendant was a prostitute and that it is unlikely that a jury, without being adequately instructed, would independently come to the conclusion that a customer who refused to pay a prostitute is guilty of rape if he forces his sexual desires upon a now unwilling woman.

Although I agree that the trial judge had an obligation to give proper instructions even though they were not requested, in a case where a failure to give them was clearly prejudicial, I believe it is important to emphasize that, as between the trial judge and trial counsel, the greater blame falls upon counsel who failed to protect his client and perform his obligations toward the court.