PEOPLE v NG

Docket No. 85635. Submitted November 14, 1986, at Lansing. Decided December 16, 1986.

Phillip Ng was convicted of attempted murder and manufacturing explosives with unlawful intent, following a jury trial in the Midland Circuit Court, Paul J. Clulo, J. The complaining witness had received a parcel containing a bomb that did not explode due to a defect in its construction. Defendant was sentenced to prison terms of life for attempted murder and from forty to sixty months for the explosives conviction. He appealed, raising several issues.

The Court of Appeals *held:*

1. Appellate review of defendant's claim that the examining magistrate should have bound over on a charge of assault with intent to commit murder rather than attempted murder is precluded by defendant's failure to object to that decision at the preliminary examination or at the trial court level.

2. The record disclosed facts from which the jury could have concluded that (1) defendant had intended to commit murder, (2) had completed an overt act necessary to the commission of murder, and (3) had failed to consummate the crime of murder. Defendant's conviction for attempted murder was, therefore, proper.

3. The fact that the bomb could not have ensured the victim's death, even if it had exploded, made it factually impossible for defendant to murder the victim in the manner he had intended. However, such factual impossibility is not a defense to a charge of attempted murder.

4. The trial court's admission into evidence of videotaped

REFERENCES

Am Jur 2d, Appeal and Error § 881.

Am Jur 2d, Criminal Law § 160.

Am Jur 2d, Homicide §§ 110, 565-567.

Construction and application of state statute governing impossibility of consummation as defense to prosecution for attempt to commit crime. 41 ALR4th 588.

What constitutes attempted murder. 54 ALR3d 612.

See also the annotations in the Index to Annotations under Appeal and Error.

detonations of facsimiles of the bomb made by a trooper from the state police crime laboratory was not an abuse of discretion. Differences between the original bomb and the facsimiles were not important and were considerations going to the weight, and not the admissibility, of such evidence. In addition, the videotapes had a legitimate purpose in assisting the jury in determining defendant's intent.

5. Defendant failed to object to portions of the jury instructions from which he claimed error. He, therefore, did not preserve the issue for appeal, and no manifest injustice results from the Court of Appeals' decision not to review the claimed error.

Affirmed.

1. Homicide — Attempted Murder.

A defendant who mailed a parcel containing a bomb which did not detonate due to a defect in construction may properly be convicted of attempted murder where (1) his intent to murder the victim could be inferred from the bomb's potential to inflict serious injury or death, (2) he committed an overt act necessary to the commission of murder by constructing and mailing the bomb, but (3) he failed to consummate the crime of murder because of the bomb's faulty construction.

2. Homicide — Attempted Murder — Defenses.

Factual impossibility is not a defense to the crime of attempted murder.

3. Criminal Law — Trial — Evidence — Appeal.

The use of visual aids and the determination of whether the probative value of logically relevant evidence is outweighed by its unfairly prejudicial effect rests within the sound discretion of the trial judge and will not be reversed absent a clear abuse of discretion.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Gerald L. White*, Prosecuting Attorney, and *Norman W. Donker*, Senior Assistant Prosecuting Attorney, for the people.

*C. Michael Gorte, P.C.* (by *C. Michael Gorte*), for defendant.

Before: R. B. BURNS, P.J., and GRIBBS and A. T. DAVIS,* JJ.

R. B. BURNS, P.J. Defendant was convicted, following a jury trial, of attempted murder, MCL 750.91; MSA 28.286, and manufacturing explosives with unlawful intent, MCL 750.211; MSA 28.408. He was sentenced to life in prison on the attempted murder count and from forty to sixty months on the explosives count. He now appeals and we affirm.

On the morning of November 3, 1983, a postal carrier delivered a package to the Midland home of Noel and Diana Lejoice. Diana started to open it, but became suspicious when she saw a straw attached to one of the box flaps and discovered, by shaking the box, that it contained a liquid. She took the box to her husband, who was sleeping in an upstairs bedroom. He examined the box and then rushed outside with it and then contacted the police. His fear that the box contained a bomb was later confirmed.

After the Midland police arrived, they placed a bomb blanket over the box and waited for a state police bomb squad to arrive. The bomb squad eventually arrived and disarmed the bomb.

Defendant became a suspect in the mail bombing when the box containing the bomb was traced to a Nevada company, which had sold such a box to defendant approximately two weeks prior to the incident. Defendant had employed Diana Lejoice at his restaurant in 1982. She had filed a complaint with the Department of Labor over defendant's shorting her on her paycheck. The department found in her favor and ordered defendant to pay her back wages. Defendant thereafter laid off Lejoice, who again complained to the department,

* Circuit judge, sitting on the Court of Appeals by assignment.

which ordered payment of $75 per week for the time she was laid off.

State Trooper Kent Gardner, of the Bridgeport forensic laboratory, disarmed the bomb and transported it to the state police crime laboratory. At the crime laboratory, Gardner dismantled the device, removing a plastic container containing gasoline. Gardner opined that the device, upon detonation, would render a low order explosion (one that burns) rather than a high order explosion (one that detonates). Gardner stated that a low order explosion would create intense burning and heat, but may not produce sufficient force to propel the shrapnel that was contained in the device. Gardner also discovered that the 9-volt battery in the device was not sufficiently charged to ignite the device and there was also a defective electrical switch. Gardner stated that either defect was enough in and of itself to render the device incapable of detonation. Gardner made tests and determined that a fully charged 9-volt battery would be sufficient to ignite the device.

After Gardner dismantled the device and examined it, he constructed several devices as near to the original as he could with available materials. The facsimiles were the same as the original except that a different, but similar, plastic container was used because the plastic container used in the original was no longer in production. Gardner also did not use the same electrical circuitry as in the original, although the duplicate was actually ignited by the same type of model rocket engine as in the original device. Instead of using a 9-volt battery, Gardner used a 12-volt battery to detonate the device. Gardner stated that he was not interested in the circuitry of the bomb, but the results of the bomb itself. Finally, Gardner videotaped six detonations of the devices. During the course of his

testimony, the jury was shown a videotape which depicted three detonations of the duplicate devices.

The videotapes were also shown to Dr. Lawrence R. Simson, Jr., an associate pathologist at Edward W. Sparrow Hospital in Lansing, and to Dr. Irving Feller, of the University of Michigan Burn Center. Both men opined on the effect of the bomb if exploded on a person's lap. They indicated that the victim would receive first-, second-, and third-degree burns over twenty-three to thirty percent of their body. Dr. Feller estimated that a victim in his or her mid-twenties with burns over twenty-three percent of the body would have a three to five percent chance of mortality. Dr. Simson indicated that, while the odds favored survival, death was a possibility and that if the victim inhaled during the explosion, his or her airways would be burned, causing instantaneous death.

George E. Fassnact, who specializes in forensic firearms and tool marks, testified that he was retained by defendant to render an opinion with regard to certain evidence involved in defendant's prosecution. Fassnact inspected the device, which he did not consider to be very sophisticated, and expressed serious doubts whether the device had the ability to ignite. Fassnact stated that the battery contained in the device could not cause the model rocket motor to ignite and thus rendered the device incapable of detonation. Fassnact also believed that one of the switches in the device was unreliable and could also cause the device not to detonate. Fassnact opined that the device could have been designed to frighten someone and that the device may not have been designed to be lethal. On cross-examination, Fassnact conceded that, if everything worked properly upon detonation of the device, there would be a possibility of injury.

I

Defendant first argues that, since attempted murder and assault with intent to commit murder are mutually exclusive charges, and the evidence established that an assault was committed, it was improper to convict defendant of attempted murder rather than assault with intent to commit murder.

Defendant was originally charged with attempted murder, assault with intent to commit murder, and the manufacturing of an explosive device with unlawful intent. At the conclusion of proofs during the preliminary examination, defendant moved for an election of counts. The examining magistrate held that the attempted murder charge was the appropriate count on which to bind defendant over. Thereafter, defendant was bound over on the counts of attempted murder and the manufacturing of an explosive device with unlawful intent.

At the outset of trial, defendant moved to quash the attempted murder charge on the theory that the prosecutor failed to prove that the bomb would have ensured death had it detonated. The trial judge denied the defendant's motion, holding that there was sufficient evidence for the bindover. At no time did the defendant indicate that the examining magistrate had erred in not binding defendant over on assault with intent to murder.

Defendant did not object at trial that he was not charged with assault with intent to commit murder as opposed to attempted murder. Failure to object at trial precludes appellate review absent manifest injustice. *People v Handley,* 415 Mich 356, 360; 329 NW2d 710 (1982). In the proceedings below, if defendant believed this to be an assault case, the examining magistrate should have been

notified at the time of the election of counts or at trial. This Court has held that it is improper to make an appellate parachute out of issues not raised below. *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969). Manifest injustice will not result if this Court declines to review the issue. Defendant's failure to object in the lower court, especially after requesting an election of counts, precludes review by this Court.

However, defendant also argues that he cannot be convicted of attempted murder because the device, as it was constructed, was not capable of ensuring the death of Diana Lejoice. We disagree. There are three elements to an attempt: (1) intent to commit a crime; (2) an overt act necessary to the commission of the crime; and (3) failure to consummate the crime. *People v Lucas,* 47 Mich App 385, 387; 209 NW2d 436 (1973). See also *People v Frost,* 148 Mich App 773, 776; 384 NW2d 790 (1985).

A defendant's intent may be inferred from his acts. *People v Love,* 127 Mich App 596, 605-606; 339 NW2d 493 (1983), rev'd on other grounds 425 Mich 691; 391 NW2d 738 (1986). In the case at bar, the jury could infer defendant's intent to commit the crime of murder from the testimony regarding the make-up of the bomb, particularly the fact that it was loaded with shrapnel, and that the bomb had the potential to inflict serious injury or death. That is, the jury could conclude that defendant, in designing the bomb, was designing a bomb that could kill, not just frighten or inflict slight injuries.

As to the overt act requirement, an overt act is an act which is unequivocally referable to the commission of the specific crime. *People v Bowen,* 10 Mich App 1, 12; 158 NW2d 794 (1968). This

element was satisfied by defendant's construction and mailing of the bomb.

As to the final requirement, it is obvious that defendant failed to consummate the crime.

Defendant also argues that, because the bomb was defective and could not ensure death, he could not be guilty of attempt. This argument is without merit. While legal impossibility is a defense to the crime of attempt, factual impossibility is not. *People v Tinskey*, 394 Mich 108; 228 NW2d 782 (1975); *People v Jones*, 46 Mich 441; 9 NW 486 (1881); *People v Smith (On Rehearing)*, 89 Mich App 478, 486; 280 NW2d 862 (1979).

The defect in the bomb rendered it factually impossible for defendant to have killed Diana Lejoice, but it was not legally impossible. Accordingly, the fact that the bomb could not detonate is not a defense to the crime of attempted murder.[1]

To the extent that defendant argues that he could not be convicted of attempted murder because, even if the bomb detonated, it would have been insufficient to ensure death, we also reject that argument. The case at bar is similar to the illustration given in 4 Wharton, Criminal Law (14th ed), § 745, pp 583-584:

> A related type of case, falling under the head of factual impossibility, is when the method selected by a defendant to produce a particular criminal result is apparently adequate but in fact inadequate. Thus, a defendant is guilty of attempted murder when, with intent to kill, he puts poison in a cup, but the quantity is not enough to produce death.

Thus, the inability of the bomb, even if detonated,

---

[1] We note that had defendant *known* the bomb could not detonate, that would have provided the jury with the basis to conclude that defendant did not have the intent to kill, but merely to frighten. However, the evidence does not compel such a conclusion by the jury.

to ensure death is a form of factual impossibility like the insufficient amount of poison, which does not establish a defense to the crime of attempt. The relevant question for the jury was whether defendant believed the bomb could kill and intended it to do so.

In view of the evidence presented, particularly that of the experts who opined that, while it was most likely the victim would have survived the explosion, death was possible, it was reasonable for the jury to conclude that defendant intended the bomb to kill, not just frighten. Accordingly, defendant's argument related to the bomb's inability to ensure death is without merit.

## II

We next consider defendant's argument that the trial court abused its discretion in admitting into evidence videotapes of the detonation of copies of the bomb. Trooper Gardner constructed several facsimiles of the bomb. These facsimiles were as similar to the original as he could make them. The plastic container was slightly different as the original container was no longer in production. He replaced it with a container that was similar to the original for all practical purposes. The bomb circuitry was different, but it was detonated by the same type of model rocket engine. Gardner videotaped six detonations, of which three were shown to the jury during Gardner's testimony.

The use of visual aids is left to the trial court's discretion. *Jackson v Sabuco,* 21 Mich App 430, 437; 175 NW2d 532 (1970). Similarly, the determination of whether the probative value of logically relevant evidence is outweighed by its unfairly prejudicial effect rests within the sound discretion of the trial judge and will not be reversed absent a

clear abuse of discretion. *People v Castillo,* 82 Mich App 476, 482; 266 NW2d 460 (1978).

Thus, the first question to be answered is whether the evidence was relevant. We believe it was. The force and effect of the explosion was relevant to the jury's determination of defendant's intent to kill. Nor do we believe the trial court abused its discretion in admitting the evidence because it was more prejudicial than probative.

Defendant does not argue that the videotapes were prejudicial because of how the detonations were presented (i.e., in an unduly gory or biased manner). Rather, defendant argues that prejudice arose from the differences in the facsimiles from the original and that the purpose for showing the videotapes was to arouse the jury's passions and bias. We disagree.

As to the differences between the facsimiles and the original, these differences were explained to the jury. Trooper Gardner endeavored to make the design of the facsimiles, in all important aspects, as close to the original as available materials permitted. The differences do not appear to be important enough to render the demonstrations totally useless. Any minor differences go to the weight placed on the evidence by the jury and not to the admissibility.[2] As to the purpose of showing the videotapes, we have already stated the videotapes had a legitimate purpose in assisting the jury in determining defendant's intent.

Accordingly, we conclude that the trial court did not abuse its discretion in admitting the videotapes into evidence.

---

[2] As to defendant's objections to the differences in the circuitry of the bombs, there is no evidence to suggest the circuitry affected the force or extent of the explosion.

III

Finally, defendant claims error in the trial court's instructions to the jury. However, following the jury instructions, defense counsel stated he was satisfied with the instructions and had no objections. Since this issue is not preserved for appeal, and no manifest injustice results from our declining to review the issue, we so decline. See *People v Delaughter,* 124 Mich App 356; 335 NW2d 37 (1983).

Affirmed.