## PEOPLE v BARKER

Docket No. 106265. Submitted April 18, 1989, at Lansing. Decided August 22, 1989. Leave to appeal applied for.

Stacey Barker was convicted of first-degree murder following a jury trial in the Oakland Circuit Court. The trial court, Fred M. Mester, J., sentenced her to life imprisonment without parole. Defendant appealed.

The Court of Appeals *held:*

1. Defendant, a young, black woman, was not denied her right to an impartial jury when the prosecutor used a peremptory challenge to strike a black person from the jury. The facts indicate that the prosecutor did not exercise his peremptory challenge with respect to this juror merely because the juror was black.

2. The jury was adequately instructed. The Court of Appeals noted that, although a rape victim has the right to defend herself unto death, a defendant is not entitled to have the jury instruction on self-defense specifically tailored to include an instruction that a rape victim is entitled to defend herself with lethal force.

3. The trial court did not abuse its discretion in admitting into evidence a videotape of the crime scene, showing the victim's apartment and the victim's body lying in the kitchen, and two autopsy photographs taken of the victim.

Affirmed.

MARILYN KELLY, J., concurred in the result but wrote a separate opinion to express her disagreement with the holding that the defendant is not entitled to have the jury specifically instructed that she had the right to defend herself from being raped by using force, including deadly force. While she would find that the trial court's refusal to so instruct the jury was error, she would find such error to be harmless in this case.

REFERENCES

Am Jur 2d, Evidence §§ 785 *et seq.;* Homicide § 519; Jury §§ 173 *et seq.,* 233 *et seq.,* 284.

Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.

1. CIVIL RIGHTS — JURY TRIALS — PURPOSEFUL DISCRIMINATION.

The burden initially falls upon the defendant to make out a prima facie case of purposeful discrimination where a prosecutor used peremptory challenges to strike blacks from a jury where the defendant is also black; once such a showing is made, the burden shifts to the state to explain adequately the racial exclusion; the state cannot meet its burden on the general assertion that its officials did not discriminate, but must show that permissible racially neutral selection criteria and procedures were used in selecting the jury; the trial court must then determine if the defendant has established purposeful discrimination.

2. CIVIL RIGHTS — JURY TRIALS — PURPOSEFUL DISCRIMINATION.

To establish a prima facie case of purposeful discrimination resulting from a prosecutor's use of peremptory challenges to strike members of the defendant's race from his jury panel, the defendant must show that he is a member of a cognizable racial group, that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race, and that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

3. HOMICIDE — JURY INSTRUCTIONS — DEADLY FORCE — SEXUAL ASSAULT.

A rape victim has the right to defend herself unto death, but a defendant who alleges that she used deadly force in defending herself against a sexual assault is not entitled to have the jury instruction on self-defense specifically tailored to include an instruction that a rape victim is entitled to defend herself with lethal force; an instruction concerning the circumstances under which a person may use lethal force in self-defense is adequate and there is no need for a specific self-defense instruction on whether lethal force may be used to repel a particular type of assault or to otherwise defend against being the victim of a crime.

4. CRIMINAL LAW — EVIDENCE — VIDEOTAPES — PHOTOGRAPHS.

The admission of photographic evidence rests within the sound discretion of the trial court; review of the trial court's exercise of discretion is directed to ascertaining whether the admission of the photographs was substantially necessary or instructive to show material facts or conditions rather than merely calculated to excite passion or prejudice; photographs which are pertinent, relevant, competent, or material on any issue in the case should not be rendered inadmissible merely because they show

the details of a gruesome or shocking crime; assuming the materiality of photographs, a trial court should still weigh the potential prejudicial effect against probative value; the same standard that is applied in determining whether to admit photographic evidence applies to videotaped evidence.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan*), for defendant on appeal.

Before: SULLIVAN, P.J., and SAWYER and MARILYN KELLY, JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of murder in the first degree. MCL 750.316; MSA 28.548. Defendant was sentenced to a mandatory term of life in prison without parole. She now appeals and we affirm.

Briefly, the victim was an eighty-one-year-old white male and retired Lutheran minister. He suffered from various physical ailments and relied on a cane to walk. Defendant is a young, black woman who worked as a companion to another resident in the same apartment complex as the victim. Defendant and the victim were acquainted and defendant was present at the victim's apartment on the evening of his death. Defendant admits to killing the victim, but claims that she did so in self-defense. Specifically, defendant claims that the victim started to make sexual advances towards her and would not stop even when she resisted. According to the medical examiner, the victim suffered ten blows to the head with a blunt instrument and approximately thirty-two stab

wounds to the back. In a statement to the police during the investigation, defendant indicated that her reaction and the extent of her conduct in defending herself was in part a result of her having been previously raped and the fear of it happening again.

Defendant first argues that she was denied her right to an impartial jury when the prosecutor used a peremptory challenge to strike a black venireperson from the jury. We disagree.

The United States Supreme Court has ruled that a prosecutor may not use peremptory challenges to strike blacks from a jury where the defendant is also black. *Batson v Kentucky,* 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). In looking at such an issue, the burden initially falls upon the defendant to make out a prima facie case of purposeful discrimination. *Id.* at 93-94. Once the defendant makes that showing, the burden shifts to the state to explain adequately the racial exclusion. *Id.* at 94. Moreover, the state cannot meet its burden on the general assertion that its officials did not discriminate, but must show that permissible racially neutral selection criteria and procedures were used in selecting the jury. *Id.*

To establish a prima facie case, a defendant must show that he is a member of a cognizable racial group, that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race, and that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. *Id.* at 96. In deciding whether the defendant has made the requisite showing, the trial court must consider all relevant circumstances, including whether there is a pattern of strikes against black jurors and the ques-

tions and statements made by the prosecutor during voir dire and in exercising his challenges, all of which may support or refute an inference of discriminatory purpose. *Id.* at 97.

If a defendant makes such a prima facie showing of discriminatory purpose, the burden shifts to the state to come forth with a neutral explanation for challenging black jurors, though that burden does not rise to the level of requiring the prosecutor to justify the exercise of a challenge for cause. *Id.* at 97. However, the prosecutor may not rebut the defendant's prima facie case of discrimination by merely stating that the jurors were challenged on the basis of the assumption, or the prosecutor's intuition, that the jurors would be partial to the defendant because of their shared race. *Id.* Similarly, the prosecutor's mere statements of good faith or denial of a discriminatory motive are insufficient to rebut the defendant's showing of discrimination. *Id.* at 98. Rather, the prosecutor must articulate a neutral explanation related to the particular case to be tried. *Id.* The trial court must then determine if the defendant has established purposeful discrimination. *Id.* Finally, the trial court's findings should be given great deference. *Id.,* n 21.

Turning to the case at bar, defendant objected to the prosecutor's using a peremptory challenge to excuse one of two black venirepersons. The prosecutor explained that he struck the one black juror because of her similarity to defendant in terms of age and status. The prosecutor further explained that he also dismissed two white jurors for similar reasons. Finally, the prosecutor explained that he did not peremptorily excuse the other black juror on the panel because she was older than defendant and had a good job. That is, the black juror who remained was not similar to defendant in age and

status. Thereafter, the trial court indicated that it was satisfied with the prosecutor's explanation and ruled that the peremptory challenge was properly exercised.

In this case, the prosecutor offered a racially neutral explanation for exercising his peremptory challenge to strike one of the two black venirepersons. The trial court accepted this explanation, concluding that the prosecutor was properly motivated in exercising the peremptory challenge. We must give great deference to that determination. Moreover, *Batson* does not stand for the proposition that a prosecutor is not permitted to use a peremptory challenge to strike a black venireman whenever the defendant is also black. Rather, the prosecutor is prohibited from striking a black venireman simply because the venireman is black. In this case, we are satisfied with the prosecutor's explanation that he did not exercise his peremptory challenge with respect to this juror merely because the juror was black. Accordingly, we conclude that defendant is not entitled to a new trial on this issue.

Defendant next argues that she was denied a fair trial by the trial court's denying her request to instruct the jury that a person is entitled to use deadly force in defending herself against a sexual assault. We disagree. This Court has held that a defendant is entitled to such an instruction. *People v Landrum (On Remand),* 171 Mich App 148, 152; 429 NW2d 818 (1988), lv gtd 431 Mich 905 (1988). See also *People v Landrum,* 160 Mich App 159; 407 NW2d 614 (1986), vacated and remanded for reconsideration on other grounds 430 Mich 861 (1988). We agree with the *Landrum* Courts' observations that a rape victim has the right to defend herself "unto death." See *Pond v People,* 8 Mich 150, 181-182 (1860). However, we disagree with the

conclusion in *Landrum* that a defendant is entitled to have the jury instruction on self-defense specifically tailored to include an instruction that a rape victim is entitled to defend herself with lethal force.

CJI 7:9:01 provides in pertinent part as follows:

> (3) First, at the time of the act the defendant must honestly believe that he is in danger of being killed or of receiving serious bodily harm. If he so believes, he may immediately act and defend himself, even to the extent of taking human life if necessary. Although it may now turn out that the appearances were false and that he was mistaken as to the extent of the real danger, he is to be judged by the circumstances as they appeared to him at the time of the act.
>
> (4) Second, the degree of danger which must be feared is serious bodily harm or death. A person is not justified in killing or inflicting great bodily injury upon another in order to protect himself from what appears to be slight or insignificant injury. In deciding whether at the time the defendant feared for his life or safety, you should consider all of the surrounding circumstances: [the condition of the parties, including their relative strength/whether the other party was armed with a dangerous weapon or had other means to injure the defendant/the nature of the threat or attack of the other party/previous acts of brutality or threats of the other party of which the defendant was aware].

We believe that that instruction adequately instructs a jury on the circumstances under which a person may use lethal force in self-defense and there is no need to specifically instruct the jury as part of the self-defense instruction on whether lethal force may be used to repel a particular type of assault or to otherwise defend against being the victim of a crime. Moreover, we believe that the

peculiar issues of a given case may be adequately addressed by the parties in their closing arguments and in the court's instructions on the parties' theories of the case, if such a theory of the case instruction is requested.[1] In sum, we believe that the jury was adequately instructed.

Finally, we turn to defendant's arguments that the trial court abused its discretion in admitting into evidence a videotape of the crime scene, which showed the victim's apartment and the victim's body lying in the kitchen, and two autopsy photographs taken of the victim. We do not believe the trial court abused its discretion.

This Court discussed the admission of photographic evidence in *People v Duby,* 120 Mich App 241, 256-257; 327 NW2d 455 (1982):

> Admission of photographic evidence rests within the sound discretion of the trial court. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972). On review, the Court must determine whether the photographs were substantially necessary or instructive to show material facts or conditions or whether they were merely calculated to excite passion and prejudice. *People v Falkner,* 389 Mich 682, 685; 209 NW2d 193 (1973); *People v Rocha,* 110 Mich App 1, 13; 312 NW2d 657 (1981). The substantially necessary test is nearly the same as asking whether the evidence is helpful in throwing light on any material point in issue. *People v Browning,* 106 Mich App 516, 523; 308 NW2d 264 (1981). Photographs which are pertinent, relevant, competent, or material on any issue in the case are not rendered inadmissible merely because they show the details of a gruesome or shocking crime. *People v Fuzi No 2,* 116 Mich App 277; 323 NW2d 358 (1982). Assuming the materiality of photographs, the trial court

---

[1] We note that in the case at bar the parties specifically waived having the court read the theories of the case.

must still weigh the potential prejudicial effect against probable value. *People v Wallach,* 110 Mich App 37, 64, fn 6; 312 NW2d 387 (1981).

Moreover, this Court recently stated that the admission of videotaped evidence is "closely analogous" to the admission of photographic evidence. *People v Sharbnow,* 174 Mich App 94, 102; 435 NW2d 772 (1989). See also *People v Ng,* 156 Mich App 779, 787-788; 402 NW2d 500 (1986). In fact, we believe that the same standard should be applied to videotaped evidence as is applied to photographic evidence. Of course, in exercising its discretion, the trial court must take into account the differences between the two media.

Turning to the case at bar, we do not believe that the trial court abused its discretion in admitting either the autopsy photographs or the videotape of the crime scene. Specifically, we believe that the photographic and videotaped evidence was relevant in that it shed light on defendant's claim of self-defense and the credibility of that claim. The nature and extent of the wounds to the victim, as well as the large number of wounds, tended to contradict defendant's claim of self-defense, as did the nature of the crime scene. As to the latter point, the videotape showed the blood trails and the other appearances of the victim's apartment, which were directly relevant to the issue whether defendant was acting in self-defense. For these reasons, we conclude that the trial court did not abuse its discretion in admitting the evidence.

Affirmed.

Marilyn Kelly, J. *(concurring).* I concur in the result. However, I disagree with the position of the

majority with respect to the Landrum[1] decision. The defendant is entitled to have the jury specifically instructed that she had the right to defend herself from being raped by using force, including deadly force.

The standard instruction on self defense informs jurors that deadly force may be used when one is "in danger of being killed or receiving great bodily harm." It leaves the door open for a juror to decide that forcible rape in a given case would have caused neither death nor great bodily harm. The juror could then reasonably conclude that the accused was not entitled to kill the rapist to prevent the rape. The instructions must inform the jury explicitly that, if it reasonably appeared necessary to the person assailed, she was entitled to use deadly force to repel a rapist. Anything less vitiates the *Landrum* holding.

In this particular case, the refusal of the trial judge properly to tailor the instruction was error, but it was harmless. Defendant bludgeoned the deceased ten times and stabbed him thirty-two times. Some of the wounds appeared to have been inflicted while he attempted to crawl away. The judge instructed the jury that defendant claimed she acted in lawful self-defense. Although they were not told she was entitled to use deadly force, no reasonable juror could have believed such force was necessary to prevent rape by the enfeebled deceased.

---

[1] *People v Landrum,* 160 Mich App 159; 407 NW2d 614 (1986), vacated and remanded for reconsideration on other grounds 430 Mich 861 (1988); *People v Landrum (On Remand),* 171 Mich App 148; 429 NW2d 818 (1988), lv gtd 431 Mich 905 (1988).