# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CURTIS DICKERSON,

Defendant-Appellant.

UNPUBLISHED
May 5, 2016

No. 324993
Wayne Circuit Court
LC No. 14-006051-FC

Before: O'CONNELL, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted by a jury of kidnapping, MCL 750.349(1)(c), felonious assault, MCL 750.82, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. He was acquitted of three counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(c) and (e). Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 12 years to 337 months for the kidnapping conviction, two to four years for the felonious assault conviction, and two to five years for the felon in possession conviction, all of which were to be served consecutive to a two-year prison term for the felony firearm conviction. He appeals as of right from his November 21, 2014 judgment of sentence. We affirm defendant's convictions but remand as it relates to sentencing for further proceedings in light of our Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. BACKGROUND

Defendant's convictions arise out of an incident that took place in defendant's home in July 2014. Two women, Kiarra Collins and Jasmine Barnett, visited defendant's home, an upper-level unit in a duplex. The evening was seemingly uneventful until the women decided to leave defendant's home. After calling a friend for a ride, the two women found the door on the home locked. When they asked defendant to unlock the door, defendant began "flipping out," grabbed a gun, and fired several gunshots off the "top porch" of the home. Defendant then slapped Collins, took her into a separate, locked room, and allegedly sexually assaulted her. Afterward, defendant unlocked the door and agreed to let the women leave. Defendant was charged, convicted, and sentenced as described above. This appeal followed.

## II. ANALYSIS

### A. *BATSON* CHALLENGE

On appeal, defendant first argues that the trial court erred in denying his objection to the prosecution's use of peremptory challenges during jury selection. We disagree.

A prosecutor cannot use peremptory challenges to strike jurors from a jury on the basis of their race. *Batson v Kentucky*, 476 US 79, 86-89; 106 S Ct 1712; 90 L Ed 2d 69 (1986); *People v Barker*, 179 Mich App 702, 705; 446 NW2d 549 (1989). Indeed, a prosecutor cannot strike jurors based on their race, regardless of the defendant's race. *Powers v Ohio*, 499 US 400, 415; 111 S Ct 1364; 113 L Ed 2d 411 (1991). Whether a peremptory challenge has been improperly exercised in violation of *Batson* involves a three-step inquiry:

> First, there must be a prima facie showing of discrimination based on race. To establish a prima facie case of discrimination based on race, the opponent of the challenge must show that: (1) the defendant is a member of a cognizable racial group; (2) peremptory challenges are being exercised to exclude members of a certain racial group from the jury pool; and (3) the circumstances raise an inference that the exclusion was based on race. The *Batson* Court directs trial courts to consider all relevant circumstances in deciding whether a prima facie showing has been made.
>
> Once the opponent of the challenge makes a prima facie showing, the burden shifts to the challenging party to come forward with a neutral explanation for the challenge. The neutral explanation must be related to the particular case being tried and must provide more than a general assertion in order to rebut the prima facie showing. If the challenging party fails to come forward with a neutral explanation, the challenge will be denied.
>
> Finally, the trial court must decide whether the non-challenging party has carried the burden of establishing purposeful discrimination. Since *Batson*, the Supreme Court has commented that the establishment of purposeful discrimination comes down to whether the trial court finds the . . . race-neutral explanations to be credible. . . . If the trial court finds that the reasons proffered were a pretext, the peremptory challenge will be denied. [*People v Bell*, 473 Mich 275, 282-283; 702 NW2d 128 (2005) (citations and internal quotation marks omitted).]

The applicable standard of review for a *Batson* issue depends on which of the three *Batson* steps is in dispute. *People v Knight*, 473 Mich 324, 338; 701 NW2d 715 (2005). "[T]he first *Batson* step is a mixed question of fact and law that is subject to both a clear error (factual) and a de novo (legal) standard of review. A trial judge must first find the facts and then must decide whether those facts constitute a prima facie case of discrimination under *Batson* and its progeny." *Id*. at 342. The second step is reviewed de novo on appeal. *Id*. at 343. The third step is a question of fact that is reviewed for clear error. *Id*. at 344-345.

We conclude that defendant has failed to set forth a prima face case as required by the first step. The first two components of a prima facie case are not at issue in this case. Defendant is African-American, and, at the time he objected, the prosecutor had excused six jurors and sought to excuse a seventh, and at least five of those challenged were also African-American. A prima facie case may be made out by showing that the prosecutor excused all members of a particular race, *People v Williams*, 174 Mich App 132, 136; 435 NW2d 469 (1989), or by "a 'pattern' of strikes against" members of a particular race in the venire, *Batson*, 476 US at 97. On appeal, defendant contends that he met the third component based on the number of African-Americans excluded. At trial, however, he argued *not* that the prosecutor was striking jurors based simply on their race, but that the prosecutor was striking jurors because they were "younger, African American city people." When the trial court expressed concern that the purported *Batson* challenge, as made by defendant, was not facially valid, defense counsel responded by recognizing that even if the struck jurors were not young, commenting that one "was probably in her 40s," the challenge was nevertheless valid on the ground that the jurors "lived in the city." The record reflects that defendant repeatedly pointed to the struck jurors' ages or status as "city people" or "city dwellers," not their race, as the problematic reasoning behind the prosecutor's challenges. In fact, the trial court expressly asked defense counsel to clarify the objection:

> *The Court*: And juror in seat number three stated that she lived in the same community as the Defendant. Wasn't that your argument that they're kicking out people who live in the same community as the Defendant?

> *Defense Counsel*: Yes.

For that reason, the trial court determined that he had not made out "a facially valid" objection under *Batson*. We agree. *Batson* is concerned with the racially-motivated exercise of peremptory challenges. It has been extended to gender-based exercises of peremptory challenges as well. *JEB v Alabama ex rel TB*, 511 US 127, 146; 114 S Ct 1419; 128 L Ed 2d 89 (1994). Defendant does not cite, and we are unable to find, any authority extending *Batson* to challenges based on a juror's age or place of residence. Under defendant's logic, a defendant's objection to the striking of elderly men from Northville, Caucasian people younger than 50 years old from the Upper Peninsula, and young women from college towns would all be a facially valid objections under *Batson* merely because race or gender was briefly mentioned, even if, in fact, the primary focus of the challenge was based only on age or residence. We simply cannot accept this logic. Had defendant objected to the prosecutor's challenges based on race, the issue before us would be different. But, he did not. Therefore, the trial court correctly determined that defendant had not established a prima facie case of discriminatory strikes under *Batson*.

Additionally, even if we assume that defendant made a prima facie showing of discrimination based on race, we nevertheless conclude that defendant has not demonstrated purposeful discrimination as required by the third step. *Bell*, 473 Mich at 282-283. During jury selection, after the challenge was made, the prosecution offered a variety of explanations to supports its challenges of each juror, including, for example, that one of the challenged jurors "clearly indicated that she is going to need more than additional evidence coming from the witness stand"; one of the challenged jurors "was kind of lethargic in the questioning" and "wasn't answering anything as far as the People, not even a head nod or anything of that nature";

and that more than one challenged juror "seemed very disinterested." The record supports these explanations, and defendant has not persuasively countered any of these neutral explanations.

Accordingly, we conclude that the trial court did not err in denying defendant's objection to the prosecution's use of peremptory challenges during jury selection.

## B. INCONSISTENT JURY VERDICTS

Defendant next argues that a new trial is required because the jury rendered inconsistent verdicts by acquitting him of the CSC charges but convicting him of kidnapping, which was premised on his unlawful restraint of Collins "with the intent to engage in criminal sexual penetration or criminal sexual contact." MCL 750.349(1)(c). We disagree. The law is clear that "[j]uries are not held to any rules of logic," *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980), and their verdicts "need not be rationally consistent in light of [their] power of leniency," *People v Torres*, 452 Mich 43, 75; 549 NW2d 540 (1996). "A jury in a criminal case may reach *different* conclusions concerning an *identical* element of two different offenses." *People v Goss (After Remand)*, 446 Mich 587, 597; 521 NW2d 312 (1994) (emphasis in original). Although defendant disagrees with and urges us to reject this precedent, this Court and all lower courts are bound by decisions of our Supreme Court. *People v Tierney*, 266 Mich App 687, 713; 703 NW2d 204 (2005). "[O]nly the Supreme Court has the authority to overrule its own decisions." *People v Crockran*, 292 Mich App 253, 256; 808 NW2d 499 (2011). We therefore reject this claim of error.

## C. OFFENSE VARIABLE (OV) SCORING

Additionally, defendant argues on appeal that the trial court erred by considering facts that were not found by a jury or admitted by defendant in scoring OVs 3, 4, 9, 10, and 11. This issue is unpreserved and, thus, reviewed for plain error. *Lockridge*, 498 Mich at 397. In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines are unconstitutional to the extent that they require judicial fact-finding beyond facts that are admitted by a defendant or found by a jury. *Id.* at 364. Accordingly, it explained, plain error exists when the facts admitted by a defendant or found by a jury are insufficient "to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id.* at 394. When plain error exists, a remand to the trial court for a hearing pursuant to *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005), is required to allow the trial court to determine whether, in light of the advisory nature of the sentencing guidelines, it would have imposed a materially different sentence. *Id.* at 396-397. If so, resentencing is required. *Id.* Here, the trial court scored, at a minimum, OV 11 based on conduct that was not admitted by defendant or found by a jury, i.e., the alleged sexual assaults against Collins. Thus, we remand this matter for a *Crosby* hearing under *Lockridge*. On remand, pursuant to *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 11-12, defendant is provided with an opportunity to avoid resentencing by promptly notifying the trial court that resentencing will not be sought. In light of this conclusion, it is unnecessary for us to specifically address whether the trial court correctly scored OV 11 under pre-*Lockridge* standards.

-4-

## D. DEFENDANT'S STANDARD 4 BRIEF

Defendant also raises several additional issues in his pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. We will address each separately below.

### 1. SUFFICIENCY OF THE EVIDENCE AND GREAT WEIGHT OF THE EVIDENCE

Defendant asserts that the evidence was insufficient to support his convictions, and that the jury's verdicts are against the great weight of the evidence. In presenting this argument, defendant simply invites this Court to review certain transcript pages from the preliminary examination and trial transcripts. He fails to identify the elements of any of the offenses of which he was convicted or explain why the evidence presented was insufficient to prove one or more elements of each offense. *People v Hoffman,* 225 Mich App 103, 111; 570 NW2d 146 (1997). He also fails to explain why the evidence "preponderates so heavily against the [jury's] verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). It is insufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); see also *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Nevertheless, our review of the record reveals that defendant's arguments are without merit.

A challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). This Court must view the evidence, both direct and circumstantial, in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *Hoffman,* 225 Mich App at 111. "In applying this standard, a court must 'draw all reasonable inferences and make credibility choices in support of the jury verdict.'" *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (citation omitted).

Defendant was convicted of kidnapping under MCL 750.349(1)(c), which prohibits a person from knowingly restraining another person with the intent to engage in criminal sexual penetration or criminal sexual conduct. The term "restrain" means "to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." MCL 750.349(2). Collins testified that when she was preparing to leave defendant's home, defendant came downstairs, confiscated her cell phone, assaulted her, took her upstairs, fired a gun from the doorway of the upstairs porch, took her into his bedroom, locked the door, and sexually assaulted her. This testimony, alone, was sufficient to enable the jury to find beyond a reasonable doubt that defendant knowingly restrained Collins with the intent to engage in criminal sexual penetration or criminal sexual conduct.

Defendant was also convicted of felonious assault for assaulting Collins with a gun near the door of his home. "The elements of felonious assault are (1) an assault, (2) with a dangerous

-5-

weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Jackson,* 487 Mich 783, 787, n 2; 790 NW2d 340 (2010) (citation omitted). Collins testified that as she was waiting for defendant to unlock the front door, defendant came downstairs armed with a gun, hit her several times in the face, pointed the gun toward her, and ordered her to go upstairs. This testimony was sufficient to enable the jury to find beyond a reasonable doubt that defendant assaulted Collins while armed with a dangerous weapon, intending to place her in reasonable apprehension of an immediate battery.

To be convicted of felony firearm, the prosecution must prove that the defendant possessed a firearm during the commission or attempted commission of a felony. *People v Mitchell,* 456 Mich 693, 698; 575 NW2d 283 (1998). The elements of felon in possession of a firearm are (1) the defendant possessed a firearm, (2) the defendant had previously been convicted of a felony or a specified felony, and (3) the defendant had not regained eligibility to possess a firearm. *People v Perkins*, 473 Mich 626, 630-631, n 5; 703 NW2d 448 (2005). Collins testified that defendant was armed with a gun when he came downstairs and ordered her to go upstairs, and that defendant fired the gun from the upstairs porch. A witness that was outside testified that he heard a gunshot and saw a figure on the upstairs porch. According to Collins, defendant was still armed with the gun when he took her into the bedroom, locked the door, and removed her clothing. This evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant possessed a firearm during the commission of the kidnapping, which is a felony. Further, the evidence that defendant possessed a firearm, together with the stipulation that defendant "has been convicted of a specified felony . . . [and] did not have the right to possess, use, transport or carry a firearm because his requirements for regaining eligibility had not been met," was sufficient to enable the jury to find beyond a reasonable doubt that defendant was guilty of felon in possession of a firearm.

Defendant's great weight argument is unpreserved because it was not raised in a motion for a new trial. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). Therefore, review of this issue is limited to plain error affecting defendant's substantial rights. *Cameron*, 291 Mich App at 618. In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. *Lacalamita*, 286 Mich App at 469. This Court defers to the jury's determination of credibility absent exceptional circumstances. See *People v Lemmon*, 456 Mich 625, 642-647; 576 NW2d 129 (1998) (citation omitted). Defendant does not offer any reason why Collins' testimony should not or could not be believed. The record discloses that her testimony was largely corroborated by Barnett, and another witness corroborated Collins' testimony about defendant firing a gun from the upstairs porch. There is no basis for concluding that Collins' testimony was deprived of all probative value that it could not be believed. Further, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand.

## 2. PROSECUTORIAL MISCONDUCT

Defendant additionally argues that he was deprived of his constitutional right to a fair trial because the prosecutor "presented false information" and made statements during closing argument that were not supported by the evidence. Because there was no objection to any of the challenged remarks or conduct by the prosecutor at trial, this issue is unpreserved for appellate

review and reviewed for plain error affecting defendant's substantial rights. *People v Goodin*, 257 Mich App 425, 431; 668 NW2d 392 (2003). This Court reviews claims of prosecutorial misconduct on a case-by-case basis, examining the remarks in context, to determine whether the defendant received a fair and impartial trial. *Id*. at 432.

Defendant's claim that the prosecution presented false testimony is without merit. A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009. Although defendant asserts that certain testimony presented by the prosecution was false, he does not explain why it was false or identify any facts to suggest that the prosecutor knew it was false. Accordingly, he has not demonstrated plain error.

Similarly, the record also fails to support defendant's claims that the prosecutor made remarks during closing argument that were not supported by the evidence. The prosecutor may argue the evidence and all reasonable inferences therefrom as it relates to his or her theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Although Collins never expressly testified that defendant pointed a gun at her at the moment he took her into the bedroom, such an inference was reasonable in light of the evidence that defendant was waiving the gun around and pointed the gun toward her when he confronted her downstairs, that he grabbed her and took her upstairs, that he fired a gunshot from the doorway of the upstairs porch, and that he ordered her into his bedroom while still armed with a gun. In addition, the prosecutor's remark that Collins was dragged upstairs was supported Barnett's testimony, which included her agreement that defendant "drag[ged] her up the stairs." The prosecutor's statement that defendant locked the door was a reasonable inference supported by the testimony that defendant had locked the front door after some occupants of the house walked to a gas station earlier in the evening, that defendant had the keys to the door when the group returned, and that the two women found the door locked when they later tried to leave. Lastly, contrary to defendant's argument, any inference by the prosecutor that defendant pointed the gun at both women was supported by the record as well. Specifically, when Collins was asked if defendant pointed the gun at either her or Barnett, she stated, "I mean he had it towards us, yes." Accordingly, we find no plain error.

Finally, even if we assume that the prosecutor's remarks were improper as defendant suggests, the trial court properly instructed the jury that the attorneys' statements were not evidence and should not be considered as such. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant does nothing to overcome these presumptions.

### 3. VERDICT FORM

Defendant additionally argues that the verdict form presented to the jury was confusing or misleading. We disagree. Because this argument was not raised before the trial court, it is also unpreserved and reviewed for plain error. *People v Hill*, 257 Mich App 126, 151-152; 667 NW2d 78 (2003). Specifically, defendant argues that the verdict form was misleading because it set forth the elements of the CSC charges but not the elements of the kidnapping charge. This argument is not supported by the record. The verdict form did not list the elements of the CSC charges. Rather, there were multiple CSC charges predicated on different acts, and the verdict

form merely specified the acts on which each charge was based to ensure that the jury knew which charge was predicated on which act. Because defendant was only charged with one count of kidnapping based on only one of the circumstances listed in the statute, there was no need for further explanation of that charge. The elements of the offense, like those of all of the charged offenses, were reflected by the court's jury instructions. Therefore, there was no error, plain or otherwise.

## E. DEFENDANT'S SUPPLEMENT TO HIS STANDARD 4 BRIEF

Defendant also filed, and we granted, a motion to file a supplement to his pro se brief discussed above. *People v Dickerson*, unpublished order of the Court of Appeals, entered March 16, 2016 (Docket No. 324993). In that supplement, defendant essentially re-raises his challenge to the verdict form. We, again, reject that challenge for the reasons set forth above. Relatedly, he also claims that trial counsel was ineffective in failing to object to the verdict form, but "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As we have already discussed, defendant's challenge to the verdict form is meritless. Lastly, defendant argues that his trial counsel was ineffective because he "failed to request and obtain [defendant]'s cell phone which contains the entire incident captured on video." In essence, defendant claims, *without any elaboration or support at all*, that he happened to record the entire altercation on his cell phone, that the recording proves that the prosecution's theory of the case and the victim's testimony were completely untrue, and that obtaining this video would have put the prosecution on its "heels." Stated simply, there is nothing in the record to support defendant's after-the-fact claim. Indeed, there is no indication in any other document in the lower court record that defendant has ever mentioned the existence of this allegedly flawless, innocence-proving evidence. It is defendant's, not our, burden to unravel and elaborate his appellate arguments, and that includes providing more than conclusory, self-serving statements after being convicted. See *Kevorkian*, 248 Mich App at 389. Therefore, we are unpersuaded by this argument as well.

## III. CONCLUSION

Accordingly, for the reasons set forth above, we affirm defendant's convictions. We remand this matter, however, for further proceedings as it relates to defendant's sentence in light of the *Lockridge* decision.

Affirmed but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Colleen A. O'Brien

-8-