*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COLLINS LOUIS GLENN III,

Defendant-Appellant.

UNPUBLISHED
July 2, 2020

No. 341721
Wayne Circuit Court
LC No. 17-005161-01-FC

Before: STEPHENS, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f) (personal injury), and assault with intent to do great bodily harm, MCL 750.84. We affirm.

## I. BASIC FACTS

At trial, the complainant testified that she had known defendant for over 35 years. According to the complainant, their relationship was romantic at one point, but they had not had sex since they had stopped dating in 2014. The complainant testified that on June 9, 2016, she visited defendant at his residence with plans to spend the night. That evening, the two became intoxicated, and the complainant eventually went to sleep in an upstairs bedroom. The complainant testified that defendant later came in, got in the bed, and demanded sex. According to the complainant, she rejected defendant's advances physically and verbally, but he was able to force his finger, and then his penis, into her vagina. The complainant testified that as she was leaving the room, she exchanged insults with defendant, causing him to become angry and physically assault her. She claimed that defendant eventually pushed her to the ground and forced her to perform fellatio. According to the complainant, defendant then lifted the complainant by her hair, struck her head against the stairway banister, and kicked her down the stairs.

Defendant also testified at trial, and his account of the events from June 9 differed significantly from the complainant's. According to defendant, there was not any sexual contact between him and the complainant on June 9. He claimed that he and the complainant were "[f]riends with benefits, and most recently had consensual sex on June 7, 2016. According to

defendant, on the night in question the complainant was acting erratically because she was highly intoxicated and he prevented her from refilling her drink. Defendant stated that he believed that the complainant accused him of the crimes in this case because "[he] wouldn't allow her to move [into his] home with [him]."

The jury convicted defendant as stated, and he now appeals.

## II. VERDICT FORM

Defendant first argues that the verdict form used at trial violated his constitutional rights because it did not clearly allow the jury to select a "not guilty" verdict for lesser-included offenses. We disagree.

An issue with a jury verdict form is considered an error in jury instructions. *People v Garcia*, 448 Mich 442, 483-484; 531 NW2d 683 (1995). Because defendant did not object to the jury verdict form and expressed satisfaction with the court's jury instructions and explanation of the verdict form, this issue could be considered waived. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). But because defendant also argues that counsel was ineffective for not objecting to the verdict form, review of the issue is appropriate. To the extent that direct review of the issue regarding the verdict form is not waived, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A criminal defendant has a constitutionally guaranteed right for a jury to determine whether he is guilty beyond a reasonable doubt. US Const, Am VI; Const 1963, art 1, § 20; *People v Bearss*, 463 Mich 623, 629; 625 NW2d 10 (2001). "[A] criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009).

In *Wade*, this Court concluded that the defendant's "constitutional right to a trial by jury was violated" because of a defective verdict form that "did not give the jury the opportunity to return a general verdict of not guilty." *Id*. at 468. The verdict form appeared as follows:

POSSIBLE VERDICTS

YOU MAY RETURN ONLY ONE VERDICT FOR EACH COUNT.

COUNT 1-HOMICIDE-MURDER FIRST DEGREE-PREMEDITATED (EDWARD BROWDER, JR)

__ NOT GUILTY

__ GUILTY

OR

__ GUILTY OF THE LESSER OFFENSE OF-HOMICIDE-MURDER SECOND DEGREE (EDWARD BROWDER, JR.)

OR
__ GUILTY OF THE LESSER OFFENSE OF-INVOLUNTARY MANSLAUGHTER-FIREARM INTENTIONALLY AIMED (EDWARD BROWDER, JR.). [*Id*. at 465.]

This Court concluded that the form would have been sufficient if it had "included a box through which the jury could have found defendant not guilty of second-degree murder and not guilty of involuntary manslaughter." *Id*. at 468.

The following is a photocopy of the form used by the jury in this case, including their marks to the form:

## VERDICT FORM

We the jury, find the defendant Collins Glenn as follows: .

(CHOOSE ONLY ONE)

COUNT 1          Criminal Sexual Conduct

_____ Not Guilty

Or:
✓ Guilty of Criminal Sexual Conduct in the First-Degree (Finger into Genital Opening) Causing Personal Injury with Force or Coercion

Or the lesser offense:

_____ Guilty of Criminal Sexual Conduct in the Third-Degree (Finger into Genital Opening) with Force or Coercion

(CHOOSE ONLY ONE)

COUNT 2          Criminal Sexual Conduct

_____ Not Guilty

Or:
✓ Guilty of Criminal Sexual Conduct in the First-Degree (Penis into Genital Opening) Causing Personal Injury with Force or Coercion

Or the lesser offense:

_____ Guilty of Criminal Sexual Conduct in the Third-Degree (Penis into Genital Opening) with Force or Coercion

The verdict form used in this case is distinct from the one used in *Wade* in an important way. The verdict form in *Wade* listed the "not guilty" option under the listed offense and right above the "guilty" option, then twice stated "or" and listed a lesser-included offense with only an option to select "guilty." Thus, looking at the form from *Wade*, a juror could reasonably assume

that it could find the defendant "guilty" or "not guilty" of the main offense, "or" "guilty" of one of the lesser-included offenses.

In contrast, the form here first clearly gave the jury three options: (1) defendant was not guilty, (2) defendant was guilty of the listed offense, or (3) defendant was guilty of the lesser-included offense. The form clearly indicates that jurors are to "CHOOSE ONLY ONE" of these options. Looking at the form, no reasonable juror could believe that they did not have the option to return a general not guilty verdict, so defendant's argument otherwise is without merit. And because the argument is without merit, defense counsel cannot be found ineffective for not objecting to the verdict form. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## III.  PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor committed prosecutorial misconduct[1] by suggesting that defense counsel was not a credible person and was misleading the jury with inaccurate claims. We disagree.

Defendant failed to preserve his claim of prosecutorial misconduct by objecting to the alleged error at trial, see *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011), so his claim is unpreserved. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Schutte*, 240 Mich App 713, 720; 613 NW2d 370 (2000), abrogated on other grounds by *Crawford v Washington*, 541 US 36, 64; 124 S Ct 1354; 158 L Ed 2d 117 (2004).

The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A defendant may be deprived of a fair trial if a prosecutor argues that defense counsel intentionally attempted to mislead the jury. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). This prohibition is based on the impact such an argument might have on the presumption of innocence:

> When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [*People v Wise*, 134 Mich App 82, 102; 351 NW2d 255 (2004) (citations omitted).]

---

[1] This Court explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," while only the most extreme cases rise to the level of "prosecutorial misconduct." However, we will use the phrase "prosecutorial misconduct" because it has become a term of art.

Additionally, it is improper for a prosecutor to denigrate a defendant with intemperate and prejudicial remarks. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995).

During trial, two forensic scientists testified that the amount of semen found on the vaginal cervical swab taken from the complainant indicated that the sample was left up to 72 hours before the sample had been taken. The swab was taken on June 10, 2016. When police initially interviewed defendant, he told them that the last time that he had sex with the complainant could have been three or four days before the assault, or it could have been three of four weeks. He did not specify a date. At trial, defendant testified that he had consensual sex with the complainant on June 7, 2016. Defendant's son testified that he saw the complainant at defendant's home on June 7, and he produced a work time card to demonstrate that he was not at work on that date.

Defendant first takes exception to the following statement made by the prosecutor during her closing: "Now [defendant] did make a mistake and say that his son did come over on the 9th until his attorney looked at him and made him rephrase his answer." Contrary to defendant's arguments, this statement neither denigrated defense counsel nor defendant. Defendant's testimony was that his son came over on June 7th, and so his testimony that his son came over on the 9th was indeed a "mistake." Asserting that defense counsel aided him in correcting this mistake was not improper. Both prosecutors and defense attorneys routinely correct witnesses when they misspeak, most often through cross-examination. Parties are free to point this out during their closing arguments, if they see fit. We therefore conclude that this statement by the prosecutor did not rise to the level of prosecutorial misconduct.

Defendant also takes exception to the following statement made by the prosecutor during closing arguments:

> And the nurse said that the amount of male DNA is more consistent with a recent sexual assault. And that is when the light bulb clicks at the defense table. Because all of a sudden a story that has been told since September of 2016 about how he had sex with [the complainant] three to four days earlier or maybe three to four weeks earlier now becomes, well I had sex with her two days earlier. And over the weekend they make up this story.
>
> This is their new argument; it's two days earlier now. And so he gets his son to come in and testify for him with an exhibit . . . .

These remarks exceeded the bounds of proper argument, as they clearly suggested that defense counsel and defendant "[made] up" a "story" to tell the jury only after hearing evidence that put a hole in what defendant would have otherwise said. Doing so went beyond permissibly contending that defendant's story was not worthy of belief, compare *People v Reid*, 233 Mich App 457, 478; 592 NW2d 767 (1999), because it insinuated that defense counsel assisted defendant in fabricating the testimony that was not worthy of belief. Moreover, though an otherwise improper remark may not be improper if made in response to an argument by defendant, see *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001), this remark was made in the prosecutor's initial closing remark, so it was not in response to any argument by defense counsel.

Nonetheless, we conclude that defendant is not warranted to relief for the similar reasons to those stated by this Court in *Unger*, 278 Mich App at 237:

> [V]iewed in context, the comments were relatively brief and did not likely deflect the jury's attention from the evidence presented in this case. Moreover, at the conclusion of trial, the court instructed the jury that "[t]he attorneys' statements and arguments are not evidence" and that "[y]ou should only accept things the attorneys say that are supported by the evidence or by your own common sense and general knowledge."[2] As noted earlier, jurors are presumed to follow their instructions. Finally, because a timely objection and curative instruction could have alleviated any prejudicial effect of the improper prosecutorial statement, we cannot conclude that the error denied defendant a fair trial or that it affected the outcome of the proceedings.

We further note that, in this case, directly after the prosecutor referenced the exhibit introduced by defendant's son, defense counsel raised an objection on another ground. In response to that objection, the court stated in part, "And I will remind the jury, this is the opportunity for both the prosecutor and the defense attorney to give an argument as to what they believe the evidence in this case shows. It is not evidence itself." Thus, almost immediately after the prosecutor made the contested statement, the jury was reminded that they were to decide the case based only on the evidence, and that what the prosecutor said was not evidence. This instruction, given almost directly after the improper remark, alleviated the prejudicial effect of the improper remark. On this record, we conclude that defendant is not entitled to appellate relief on his claim of prosecutorial misconduct.

Defendant argues, alternatively, that defense counsel was ineffective for not objecting. To establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance was deficient and (2) but for counsel's deficient performance, the result of the proceeding would have been different. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

We conclude that it was not unreasonable for counsel to not object to the contested statement, as counsel may have feared drawing attention to the prosecutor's remark. But even if counsel's failure to object was unreasonable, we do not believe that an objection would have resulted in a different outcome. If defense counsel objected, defendant would have been entitled to a curative instruction. As already explained, defendant received a curative instruction (albeit for a different objection) almost immediately after the prosecutor made the remark at issue. We therefore conclude that had defense counsel objected to the contested remark and immediately requested a curative instruction, the result of the proceedings would not have been different.

---

[2] The trial court here used slightly different language than the trial court from *Unger*, but it generally stated the same. The trial court here stated, "The lawyer's statements and arguments are not evidence" and, "You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge."

## IV. CONTESTED TESTIMONY

Defendant next argues that the testimony of the Sexual Abuse Nurse Examiner (SANE) Katrina Ferris, an expert in sexual assault nurse examinations, was wrongly offered to bolster the credibility of the complainant. We disagree. Defendant failed to object to Ferris's testimony at trial, so our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71. When the witness is an expert, that expert "may not vouch for the veracity of a victim." *Id*. See also *People v Smith*, 425 Mich 98, 109; 387 NW2d 814, 818 (1986).

Defendant contends that Ferris improperly vouched for the complainant's credibility during the following exchange of the prosecutor's redirect examination:

> *Q*. Defense asked you a question about the timing of this incident. And you mentioned that sometimes victims of trauma cannot necessarily remember specific times; is that correct?
>
> *A*. Yes.
>
> *Q*. Now what do you mean by victim of trauma?
>
> *A*. When a traumatic event has occurred there are sometimes [sic] that there are details about the assault that they omit to me. It's a safety mechanism that your brain does.
>
> *Q*. Okay. And that safety mechanism, is that—you know, is it something that's intentional from the victim of the sexual assault, or is it just how the brain works under those traumatic situations?
>
> *A*. It is sometimes how the brain works in those traumatic situations.
>
> *Q*. Okay. And when [the complainant] was talking to you, did you at that time believe that she was a victim of trauma?
>
> *A*. Yes, I did.

Defendant contends that Ferris's testimony that she believed that the complainant was a victim of trauma improperly bolstered or vouched for the complainant's testimony. Yet it is unclear how Ferris's testimony amounted to improper bolstering; her testimony was not a comment on the complainant's credibility or veracity, nor was it a comment on whether the complainant was, in fact, sexually assaulted. While Ferris's testimony made it more difficult for defendant to attack complainant's credibility (in that it gave a potential reason for why the complainant did not reveal certain aspects of the assault until well after the assault occurred), that is not the same as impermissibly vouching for or bolstering the complainant's testimony.

Defendant argues that Ferris's testimony that the complainant was a victim of trauma was essentially Ferris testifying that the complainant was sexually assaulted. This assertion is simply not borne out by Ferris's vague testimony about what constituted a "victim of trauma." Moreover, it wholly ignores the basis for Ferris's opinion—Ferris's account of the numerous physical injuries that the complainant suffered. According to Ferris, the complainant reported pain throughout her body, including her neck and head, and was fearful that her life was in danger. Ferris's physical examination of the complainant noted her bruised and swollen forehead, and abrasions on both of her knees with bruises around the right knee. Ferris could not determine what caused the complainant's injuries. These injuries of unknown origin formed a verifiable basis for Ferris's conclusion that the complainant suffered a traumatic event.

Defendant also argues that Ferris was not qualified to give an opinion about whether the complainant was exposed to trauma. After an expert is qualified to give an opinion, "the expert must be an expert in the precise problem as to which he undertakes to testify." *People v Beckley*, 434 Mich 691, 725-726; 456 NW2d 391 (1990). In this case, Ferris was qualified in sexual assault nurse examinations after stating that she had been a nationally certified SANE for over eight years, an emergency room nurse for five years, and an intensive care nurse for six years, and had performed over 300 examinations and testified as an expert over 10 times. Defendant states that an expert in forensic sexual assault examinations is not qualified to testify about whether trauma occurred. However, Ferris testified that her examination included a medical history, including a description of the sexual assault, and a medical examination, including documentation of injuries. Because the area of Ferris' expertise includes evaluating a victim's report of an incident and evaluating injuries as a result of an incident, Ferris was qualified to provide an opinion regarding whether her evaluation found that trauma to a victim had occurred.[3]

Lastly, defendant argues that Ferris's opinion that the complainant had endured trauma was based only on the complainant's self-report. While it is true that an expert may not testify that abuse occurred based solely on a victim's report, see *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019), Ferris did not base her testimony solely on what the complainant said, but also on her medical examination of the complainant.

In sum, defendant's challenges to the SANE's testimony do not warrant appellate relief.

## V. PRIOR FALSE ALLEGATION

Defendant argues that his trial counsel provided ineffective assistance because she did not attempt to introduce evidence of a prior unproven claim of sexual assault by the complainant. We disagree.

The complainant had previously been convicted of first-degree murder for the bludgeoning and stabbing of an older man. At her trial, the complainant asserted that she acted in self-defense when the man attempted to sexually assault her. But when the trial court in that case gave

---

[3] Defendant contends that defense counsel at trial was ineffective for not objecting to Ferris's testimony on the ground that she was not qualified. Because such an argument is meritless, defense counsel cannot be found ineffective for not raising the objection. *Ericksen*, 288 Mich App at 201.

instructions to the jury, it gave a general self-defense instruction rather than an instruction specifying that a defendant could lawfully use deadly force to resist a sexual assault. This error led a federal court to eventually vacate the complainant's conviction. See *Barker v Yukins*, 199 F3d 867, 872-874 (CA 6, 1999). After her conviction was vacated, the complainant pleaded guilty to second-degree murder, and wrote on a plea form that the circumstances of her crime were that, while visiting an acquaintance, she "became very angry with him and hit him with a statue. He tried to fight back so [she] grabbed a knife and stabbed him until he was still."

Returning to this case, the question is whether defendant could admit evidence that the complainant claimed that the victim in her second-degree murder case attempted to sexually assault her. Defendant was allowed to admit evidence showing that the complainant had made a prior false accusation of sexual assault, but to do so, he had to make an offer of proof to demonstrate the relevance of the proposed evidence. See *People v Williams*, 191 Mich App 269, 272-273; 477 NW2d 877 (1991). Evidence that the complainant made a prior false accusation of sexual assault would be relevant because it would bear directly on the complainant's credibility and "the credibility of the [complainant's] accusations" in this case. *Id*. at 272.

Thus, the complainant's prior sexual assault allegation is relevant only if defendant can make an offer of proof that it was, in fact, false. Otherwise, it would not weigh on the complainant's credibility or the credibility of her current accusations. After reviewing defendant's arguments, we conclude that there is nothing to suggest that the complainant's prior allegation of sexual assault was false.

Defendant contends that the complainant's state-court appeals suggest that her allegations of sexual assault were false because, in defendant's words, both this Court and the Michigan Supreme Court "indicated that no reasonable juror would have believed [the complainant's] claim of self-defense." While this statement is not inaccurate, neither this Court nor the Supreme Court suggested that the complainant's claim of self-defense was unbelievable based on her assertion that the victim attempted to sexually assault her. Rather, our Supreme Court agreed with a concurring opinion by a member of this Court that it was unbelievable that the complainant would need to use deadly force to prevent the sexual assault. Our Supreme Court stated:

> The decedent was eighty-one years old, walked with a cane, and was described as being unsteady on his feet. The defendant is in her early twenties, five feet, seven inches tall, and weighs 170 pounds.
>
> The evidence thoroughly contradicted the defendant's version of how and why she killed the elderly and infirm victim. We agree with Judge Marilyn Kelly's concurring opinion in the Court of Appeals that, on this record, no reasonable juror would have believed the defendant's claim of self-defense.
>
> > "Defendant bludgeoned the deceased ten times and stabbed him thirty-two times. Some of the wounds appeared to have been inflicted while he attempted to crawl away . . . . [N]o reasonable juror could have believed such force was necessary to prevent rape by the enfeebled deceased." *People v. Barker*, 179 Mich App 702, 711; 446 NW2d 549 (KELLY, J., concurring).

[*People v Barker*, 437 Mich 161, 164; 468 NW2d 492 (1991).[4]]

Defendant also points out that, in her guilty plea after her conviction was vacated, the complainant did not mention the allegation of sexual assault. However, defendant does not explain how this tends to prove that the complainant's allegation of sexual assault was false, and we see no reason why the complainant's failure to mention the alleged sexual assault when she pleaded guilty to second-degree murder suggests that the sexual assault did not, in fact, occur. Defending oneself from a sexual assault is not an element of second-degree murder, so it is unnecessary to mention an alleged sexual assault when pleading guilty to second-degree murder.

In sum, defendant has not identified anything that tends to show that the complainant made a prior false allegation of sexual assault. Without such an offer of proof, defendant cannot establish that plaintiff's prior allegation of sexual assault was relevant. See *Williams*, 191 Mich App at 272-273. Thus, defense counsel was not ineffective for failing to move to have evidence of the complainant's past allegation of sexual assault admitted. See *Ericksen*, 288 Mich App at 201.

## VI. NEWLY DISCOVERED EVIDENCE

Finally, defendant argues newly discovered evidence entitles him to a new trial. "A trial court may grant a defendant a new trial on the basis of newly discovered evidence." *People v Armstrong*, 305 Mich App 230, 241; 851 NW2d 856 (2014). As explained by our Supreme Court:

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).]

"The defendant carries the burden of satisfying all four parts of this test." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

The newly discovered evidence that defendant claims entitles him to a new trial is an affidavit from the complainant's ex-partner, Tawana Williams. In the affidavit, Williams testified that she and the complainant were in a long-term relationship until 2013 when the complainant left Williams to pursue a relationship with defendant. Williams described the complainant as "untrustworthy, manipulative, and conniving," and alleged that the complainant had, in the past,

---

[4] The majority of this Court in the complainant's second-degree murder case held that, despite the trial court's failure to specifically instruct the jury that a defendant could use deadly force to defend against sexual assault, its instructions were adequate. *Barker*, 179 Mich App at 708-709. Our Supreme Court disagreed and found that the instructions were not adequate, but affirmed because it concluded that the error was harmless for the reason explained—"no reasonable juror could have believed [deadly] force was necessary to prevent rape by the enfeebled deceased." *Barker*, 437 Mich at 164 (quotation marks and citation omitted).

"pursue[d] false or exaggerated criminal charges against individuals—including [Williams]—if they don't bend to [the complainant's] will." Williams then specified examples of such conduct. Williams also stated in the affidavit that defendant denied the complainant's "request to move into his home," and that, in response, the complainant "devised a plan to get back at him." Williams attested that, on an unspecified date, the complainant came to her home with "visible markings on her body" and told Williams that she "had a situation with [defendant]" but not to worry because the complainant "would 'get him.' " Williams' concluded her affidavit by stating that she did not believe that defendant sexually assaulted the complainant and that this was using "the criminal court system to exact revenge on him by complaining he raped her."

The affidavit satisfies the first element from *Cress*—defendant claims that neither he nor defense counsel were aware of Williams' testimony at the time of trial. See *Rao*, 491 Mich at 281 ("Michigan caselaw makes clear that evidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial."). The affidavit likewise satisfies the second element from *Cress*—much of Williams' testimony was not cumulative to evidence admitted at trial.[5]

The affidavit does not, however, satisfy the third element of *Cress*. Under that element, defendant had to establish that he "could not, using reasonable diligence, have discovered and produced" the evidence in the affidavit at trial. *Cress*, 468 Mich at 692. It is undisputed that defense counsel at trial was aware of Williams' existence and her past relationship with the complainant. Outside the presence of the jury, defense counsel said, "And [the officer] was asking the complaining witness about her relationship, and she went—[the complainant] went into a big spill about having a partner by the name of Tawana. They were in a long-term relationship and that they had split up." Defendant fails to explain why it would have been unreasonable for defense counsel, with her knowledge of Williams' existence and her relationship with the complainant, to interview Williams and produce at trial the evidence in Williams' affidavit. It was defendant's burden to establish that he could not have discovered the evidence in Williams' affidavit using reasonable diligence, see *Rao*, 491 Mich at 279, and he has failed to carry that burden.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

[5] While much of Williams' affidavit was not cumulative, some of it was. For instance, Williams attested that defendant and the complainant had a romantic relationship, but the complainant acknowledged as much at trial.